# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| REALTIME DATA LLC d/b/a IXO, | § § § | |
| Plaintiff, | § | CIVIL ACTION NO. 6:16-cv-00086-RWS-JDL |
| | § | |
| v. | § | |
| | § | |
| | § | |
| HEWLETT PACKARD ENTERPRISE | § | JURY TRIAL DEMANDED |
| CO. ET AL. | § | |
| Defendants. | § | |
| | § | |

| | | |
|---|---|---|
| REALTIME DATA LLC d/b/a IXO, | § § | |
| Plaintiff, | § | CIVIL ACTION NO. 6:16-cv-00087-RWS-JDL |
| | § | |
| v. | § | |
| | § | |
| | § | |
| SAVVIS COMMUNICATIONS | § | JURY TRIAL DEMANDED |
| CORPORATION ET AL. | § | |
| Defendants. | § | |
| | § | |

| | | |
|---|---|---|
| REALTIME DATA LLC d/b/a IXO, | § § | |
| Plaintiff, | § | CIVIL ACTION NO. 6:16-cv-00089-RWS-JDL |
| | § | |
| v. | § | |
| | § | |
| | § | |
| DELL INC. AND EMC CORPORATION, | § | JURY TRIAL DEMANDED |
| Defendants. | § | |
| | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO LIFT STAY

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...............................................................................................1

II.  FACTUAL BACKGROUND ...........................................................................2

    A.  Procedural Posture ..................................................................................2
    B.  The *Inter Partes* Review Petitions.........................................................4
    C.  The Present Actions .................................................................................5
        1.  HPE Action ...................................................................................5
        2.  Veritas And Savvis Action............................................................6
        3.  Dell Action....................................................................................6
    D.  Related Actions........................................................................................6

III.  LEGAL PRINCIPLES .....................................................................................7

IV.  ARGUMENT ....................................................................................................7

    A.  A Significant Opportunity Remains To Simplify The Issues .................8
        1.  Case Law Weighs In Favor Of Maintaining The Stay................9
        2.  Realtime's Alternative Request Should Also Be Rejected ......12
    B.  There Is No Significant Undue Prejudice To Realtime .........................12
    C.  The Nascent Stage Of The Case Weighs Heavily In Favor Of Stay ....14

V.  CONCLUSION.................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Ameranth Patent Litig. Cases*,
  No. 11cv1810 DMS (WVG), 2015 WL 12868116 (S.D. Cal. June 4, 2015) .........................10

*Armor All/STP Prods. Co. v. Aerospace Commc'ns Holdings Co.*,
  No. 6:15-CV-781, 2016 WL 6397269 (E.D. Tex. Oct. 28, 2016) ..........................................13

*Intellectual Ventures II LLC v. BITCO General Insurance Corp.*,
  Nos. 6:15-cv-0059-JRG, 6:15-cv-0060-JRG, slip op. (E.D. Tex. June 21,
  2018) ......................................................................................................................................11

*Murata Machinery USA v. Daifuku Co.*,
  830 F.3d 1357 (Fed. Cir. 2016)...............................................................................................10

*Network-1 Sec. Sols., Inc. v. Alcatel-Lucent USA Inc.*,
  No. 6:11cv492, 2015 WL 11439060 (E.D. Tex. Jan. 5, 2015) ...............................7, 11, 14, 15

*NFC Tech. LLC v. HTC Am., Inc.*,
  Case No. 2:13-cv-1058-WCB, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015)
  (Bryson, J.)..................................................................................................................... *passim*

*Pers. Audio LLC v. Google, Inc.*,
  230 F. Supp. 3d 623 (E.D. Tex. 2017) ..............................................................................11, 15

*Safe Storage LLC v. Dell Inc.*,
  No. 12-1624-GMS,  (D. Del. Mar. 11, 2016) .........................................................................10

*Tinnus Enters., LLC v. Telebrands Corp.*,
  No. 6:15-cv-551-RC-JDL, 2017 WL 379471 (E.D. Tex. Jan. 24, 2017) ...............................13

*Willis Electric Co. v. Polygroup Ltd.*,
  No. 15-cv-3443-WMW-KMM (D. Minn. Apr. 24, 2018) ........................................................9

Defendants Hewlett Packard Enterprise Company and HP Enterprise Services, LLC ("HPE"), Veritas Technologies LLC ("Veritas") and Savvis Communications Corp. ("Savvis"), Dell, Inc. and EMC Corporation ("Dell"), (collectively, "Defendants") hereby oppose Realtime Data LLC's ("Realtime") motion to lift stay.

## I.      INTRODUCTION

The above-captioned cases should remain stayed.  The challenged claims in ***four*** out of Realtime's seven asserted patents have already been invalidated, and appellate orders on these decisions will begin to issue as early as this fall.  The unique facts and circumstances of these cases—including seven patents with overlapping subject matter and claims, seven pending (or soon to be pending) appeals from numerous IPRs, two pending IPR petitions, a plaintiff that already has agreed to stay related litigation pending appeals, and the nascent stage of these cases— all confirm that the stay factors have only strengthened since the Court originally stayed this case.

***First***, lifting the stay now will almost certainly lead to wasted judicial and party resources, and more importantly, inconsistent results.  The likelihood of reversal on appeal is not trivial— Realtime admits as much by its own refusal to dismiss with prejudice its four invalidated patents. Should Defendants be successful in any of their appeals after the stay is lifted, the Court and the parties will have squandered valuable resources litigating invalid patents.  And because Realtime asserts each patent against largely the same Defendant products, assuming Realtime is successful in any of its appeals, the parties would be required to conduct a second trial on almost identical issues.

Significantly, a reversal of any decision will surely lead to conflicting results.  This is not speculation—indeed, inconsistent results have already occurred.  While the present cases were stayed, trial went forward on two of the patents asserted here in *Realtime Data LLC v. Riverbed Technology Inc.*, C.A. No. 6:15-cv-468-RWS.  Although the jury found one patent valid and the

other patent invalid, the PTAB found the exact opposite during IPR proceedings.  "Accordingly, in order to preserve the Court's and parties' resources, Realtime and Riverbed jointly request[ed] that the Court stay [the] case [including post-trial briefing on both patents] pending the final resolution of all appeals [of the PTAB-invalidated patent]" (Ex. A, *Realtime Data LLC v. Riverbed Technology Inc.*, C.A. No. 6:15-cv-468-RWS, Dkt. No. 87 at 1), which this Court granted. Likewise, a continued stay here is warranted.

*Second,* Realtime is not unduly prejudiced by a continued stay.  To the contrary, it has agreed to a stay in its related litigation against Riverbed.  And nothing has changed since this Court first granted the stay in these cases other than the passage of time.  "However, that factor is present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay."  *NFC Tech. LLC v. HTC Am., Inc.*, Case No. 2:13-cv-1058-WCB, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015) (Bryson, J.) (staying case).

*Third,* these cases are in their nascent stages.  Defendants filed the original stay motion granted by the Court with more than half a year remaining before the close of fact discovery and with trial set for more than a year away.  Again, nothing has changed except that an appellate court may affirm that the majority of the asserted patents are invalid prior to any trial that could occur in these cases.

In order to avoid further inconsistent results and wasted resources, these cases should remain stayed.

## II.    FACTUAL BACKGROUND

### A.    Procedural Posture

The three present cases were filed as part of Realtime's litigation campaign, which has involved over eighty suits, spanning more than a decade.  Here, Realtime asserts seven patents: U.S. Patent Nos. 6,597,812 (the "'812 patent"); 7,161,506 (the "'506 patent"); 7,378,992 (the

"'992 patent"); 7,415,530 (the "'530 patent"); 8,643,513 (the "'513 patent"); 9,054,728 (the "'728 patent"); and 9,116,908 (the "'908 patent") (collectively, the "Asserted Patents").   All of the Asserted Patents generally relate to data compression technologies.

Realtime filed two separate cases against Dell—one in 2015 and one in 2016.   In early October 2016, the Court, on Realtime's request, consolidated Realtime's two suits against Dell on the schedule for the 2016 case.   (*See* Case No. 6:15-cv-00463, Dkt. No. 406.)   Similarly, Realtime also filed separate cases against HPE in 2015 and in 2016.   Realtime also agreed to consolidate the two HPE cases on the 2016 case's schedule.   (*See* Case No. 6:16-cv-00086, Dkt. No. 74.)   Realtime also filed suit against Veritas and Savvis in February 2016, amending its complaint to include an additional patent in August 2016.   (*See* Case No. 6:16-cv-00078, Dkt. Nos. 1, 46.)

Although the three present cases are not consolidated, each shares the same schedule.   (Dkt. No. 63.)[1]   In November 2016, all Defendants filed a single motion to stay each of the three cases pending the completion of IPRs filed against each of the seven Asserted Patents.[2]   (*See* Dkt. No. 83.)   The Court granted Defendants' motion, initially as to Dell and HPE (Dkt. No. 96), and then as to Veritas and Savvis (Dkt. No. 106), and EMC (Case No. 6:16-cv-00089, Dkt. No. 117), after those parties agreed to full statutory estoppel.   The Court and the parties recognized that the stay could remain in place through all appeals.   (*See* Dkt. No. 96 at 10 (noting Realtime's argument that delay could be longer due to possible appeal).)

When the Court granted the stays in the above-captioned actions, the *Markman* hearing was still nearly two months away, and the parties had not yet completed claim construction

---

[1] Docket entry cites are to Case No. 6:16-cv-00078 unless otherwise noted.

[2] Defendants jointly moved with Silver Peak Systems, Inc.  The Court transferred the case against Silver Peak and omitted Silver Peak from its analysis of Defendants' motion.  (*See* Dkt. No. 96 at 2 n.1.)

discovery, nor had they begun claim construction briefing.  The end of fact discovery was still three months away, and trial was nearly a year away.

### B.      The *Inter Partes* Review Petitions

As Defendants described in their motion to stay, (*see* Dkt. No. 83 at 8-9), the Asserted Patents are related and have very similar claims.  The '506, '513, '992, and '728 patents all issued from related applications and share a common specification.  Moreover, the claims of these four patents are similar.  Likewise, the '530 and '908 patents issued from related applications and also share a common specification with similar claims.   All the Asserted Patents relate to data compression and the patents in each case are asserted against largely the same products.

Defendants filed a number of IPRs on the Asserted Patents.  Given the similarity described above, the IPRs on related patents raised similar grounds and arguments.  For example, the '530 and '908 patents were argued almost interchangeably during a single oral hearing.  Similarly, IPRs on the '506 and '728 patents were instituted on the same grounds, and those patents were also argued at a single oral hearing.  The challenged claims of the two cover substantially similar subject matter, with the '506 patent directed at method claims and '728 patent directed at system claims.  Defendants' IPRs resulted in all the challenged claims of the '812, '992, '513, and '506 patents being found invalid.  The table below summarizes the status of the IPRs on the Asserted Patents.

| Patent | IPR Nos. | Status |
|---|---|---|
| '812 patent | IPR2016-00783 | Final Written Decision issued on September 28, 2017, finding each challenged claim to be invalid.  Realtime is appealing this decision (Federal Circuit Case No. 18-1154). |
| '992 patent | IPR2016-00980 | Final Written Decision issued on October 27, 2017, finding each challenged claim to be invalid.  Realtime is appealing this decision (Federal Circuit Case No. 18-1156). |

| '513 patent | IPR2016-00978 & IPR2017-00366 | Final Written Decision issued on October 30, 2017, finding each challenged claim to be invalid.  Realtime is appealing this decision (Federal Circuit Case No. 18-1155). |
| '908 patent | IPR2016-01002, IPR2016-01672, & IPR2017-00364 | Final Written Decision issued on October 31, 2017, denying the petition.  Defendants are appealing this decision (Federal Circuit Case No. 18-1366). |
| '530 patent | IPR2016-00972 & IPR2017-00365 | Final Written Decision issued on May 15, 2018, denying the petition.   Defendants are appealing this decision (Federal Circuit Case No. 18-####).[3] |
| '506 patent | IPR2017-00176 & IPR2017-01688 | Final Written Decision issued on May 25, 2018, finding each challenged claim to be invalid.  Realtime may appeal this decision. |
| '728 patent | IPR2017-00179 & IPR2017-01690 | Final Written Decision issued on May 25, 2018, denying the petition.  Defendants will appeal this decision. |

The '908 appeal is currently stayed pending the appeal from the IPR on the related '530 patent.  Defendants have agreed to no further extensions on the appeals related to the '530 and '908 patents.

In addition to the IPRs filed by Defendants summarized above, other defendants swept up in Realtime's patent assertion campaign have also filed petitions for IPR on the Asserted Patents. The table below summarizes the status of two IPRs relevant to Realtime's motion.

| Patent | IPR No. | Status |
|---|---|---|
| '728 patent | IPR2018-00614 | Petition filed on February 13, 2018.  Institution Decision due in August 2018. |
| '728 patent | IPR2018-00703 | Petition filed on February 26, 2018.  Institution Decision due in August 2018. |

Both IPRs rely on at least one different prior art reference than Defendants' petitions above, and the institution decisions are imminent.

## C.      The Present Actions

### 1.      HPE Action

---

[3] At the time of filing, a case number had not yet been assigned.

The HPE action involves the '812, '506, '992, '530, '513, '728, and '908 patents.  The PTAB found all challenged claims of the '812, '506, '992, and '513 patents invalid.

Realtime accuses HPE's StoreOnce and Vertica products of infringing the '992, '530, '513, and '908 patents, and additionally accuses Vertica products of infringing the '812 patent.  Realtime also accuses HPE's 3PAR StoreServ, Connected Backup, and LiveVault of infringing the '506, '728, '908, and '530 patents, and HPE's Connected MX of infringing the '908 and '530 patents.  Realtime's allegations relate largely to the same aspects of the accused HPE products for all seven patents.

### 2.    Veritas And Savvis Action

The Veritas and Savvis action involves the '506, '513, '728, '530, and '908 patents.  As described above, the PTAB found all challenged claims of the '506 and '513 patents invalid.

Realtime accuses only Veritas's NetBackup products of infringing all five patents.  Further, Realtime's allegations relate to the same aspects of NetBackup for all five patents.

### 3.    Dell Action

The Dell action involves the '506, '513, '728, '530, '908, and '992 patents.  As described above, the PTAB found all challenged claims of the '506, '513, and '992 patents invalid.

Realtime accuses the Dell Ocarina ECOsystem and Dell Fluid File System of infringing the '992, '513, '530, and '908 patents; Dell Rapid Recovery software products and Dell/EMC Data Domain and DD Series duplication storage systems of infringing the '506, '728, '530, and '908 patents; and EMC XtremeIO of infringing the '506, '513, '728, '530, and '908 patents.  Realtime's allegations relate largely to the same aspects of the accused Dell products for all six patents.

### D.    Related Actions

In *Realtime Data LLC v. Riverbed Technology, Inc.*, No. 6:15-cv-468 (E.D. Tex.), the jury found claims 1 and 14 of the '530 patent invalid.  (Ex. B, No. 6:15-cv-468, Dkt. No. 41.)  The jury

also found the '513 patent valid and infringed.  (*See id.*)  Concurrently, as noted above, the PTAB reviewed the claims of the '513 patent (IPR2016-00978), finding a number of claims unpatentable. During post-trial briefing, Realtime agreed to stay the briefing in light of the PTAB's decision, including through Realtime's appeal of that decision to the Federal Circuit (Appeal No. 18-1155). (Ex. A, No. 6:15-cv-468, Dkt. No. 87.)  As Realtime recognized, "[f]inal resolution of the PTAB's decision" was important "to preserve the Court's and the parties' resources."  (*Id.*)

## III.   LEGAL PRINCIPLES

When considering whether to lift a stay, a court considers whether the circumstances that led to the stay "have changed significantly."  *Network-1 Sec. Sols., Inc. v. Alcatel-Lucent USA Inc.*, No. 6:11cv492, 2015 WL 11439060, at *1 (E.D. Tex. Jan. 5, 2015) (quotation omitted).  A court considers the same three factors it did in granting the stay, and considers whether circumstances have significantly changed the balance of those factors.  *See id.* at *2-6.  The three factors considered are: "(1) whether a stay will simplify the issues in question and trial of the case; (2) whether the stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; and (3) whether discovery is complete and whether a trial date has been set."  *Id.* at *2.

## IV.   ARGUMENT

Four of the seven patents have already been invalidated as a result of Defendants' IPRs (the '812, '992, '513, and '506 patents).  Of the remaining patents, two additional IPR petitions have been filed on one patent with institution decisions expected in the next month (the '728 patent), and a jury invalidated certain claims of another (the '530 patent).  The last patent (the '908 patent) is closely related to the patent already invalidated by a jury, and in fact, the parties argued these patents almost interchangeably during IPR.

Concurrent district court and PTAB litigation has already resulted in inconsistent results, wasting the time and resources of both the Court and jury by litigating a patent that the PTAB has

found invalid.  To avoid further conflicting results and squandered resources, this Court should maintain the stay so that the Court and the parties can benefit from the guidance (and final judgment) of the PTAB and the Federal Circuit as to all Asserted Patents.  There is no undue prejudice to Realtime (indeed, Realtime already agreed to stay another case involving two of the Asserted Patents), and the present cases were stayed well before trial.  Accordingly, the stay factors, in light of the unique facts and circumstances of this case, all weigh in favor of maintaining the stay, just as they did when the Court originally entered the stay.

### A.     A Significant Opportunity Remains To Simplify The Issues

Realtime's proposal will almost certainly lead to wasted judicial and party resources. Realtime requests the Court lift the stay as to the '530, '908, and '728 patents, while leaving the stay in place for the remaining patents that the PTAB has found invalid.  (*See* Mot. at 7.)  Should Realtime be successful in its appeals of any one of the '992, '506, and '513 patents, the parties will be required to have a second trial that will be almost entirely duplicative of the trial on the substantially similar '728 patent.  For example, the same noninfringement arguments will likely be presented because Realtime accuses largely the same products of infringement across all patents for each Defendant.  Similarly, the same damages evidence will be presented, particularly here, where the patents are directed at the same accused functionality.  Further, there are two IPRs on the '728 patent with imminent institution decisions.  While there is not complete overlap of the challenged claims, these IPRs could still simplify issues and create a record applicable to the actions here.  *See, e.g.*, *NFC Tech.*, 2015 WL 1069111, at *1 ("A stay is particularly justified when the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues." (quotation omitted)).  For example, Realtime or the PTAB may clarify the scope of the alleged inventions.  Assuming Realtime's assessment of the appeal timing is correct, (*see* Mot. at 3), these IPRs would likely come to a final written decision

around the same time the Federal Circuit resolves the appeals in Defendants' IPRs.

On the other hand, if the Defendants are successful in their appeals of any of the '728, '530, or '908 patents, the ongoing proceedings in these cases would have been needless.  The likelihood that significant expenditures will be avoided pending resolution in the Federal Circuit accordingly weighs strongly in favor of maintaining the stay.

Moreover, the Court has already expended tremendous resources on a trial on the '513 and '530 patents in the *Riverbed* action.  And Realtime seeks to have another trial on the '530 patent, despite a jury already finding two of its claims invalid, including a claim asserted here.  Yet the state of the fractured litigations, PTAB proceedings, and appeals allows Realtime to treat the *Riverbed* trial as a nullity, because it is stayed through appeal of a PTAB decision finding claims of the '513 patent invalid.

### 1.   Case Law Weighs In Favor Of Maintaining The Stay

Other courts have found that lifting a stay would be a waste of judicial and party resources in similar circumstances where there is still an opportunity to simplify the issues.  For example, in *Willis Electric Co. v. Polygroup Ltd.*, the case had been stayed for nearly eighteen months pending IPR.  *See* Case No. 15-cv-3443-WMW-KMM, Dkt. No. 103, slip op. at 1 (D. Minn. Apr. 24, 2018) (attached as Ex. C).  Despite the IPR ending in the patentee's favor, the court found that the record did not show that the likely simplification of the issues had "changed significantly as a result." *Id.* at 2.  Instead, the court found that "[w]aiting to begin this litigation until the Federal Circuit resolves the appeal will be useful in simplifying and narrowing the issues." *Id.*  The court also recognized that "[m]aintaining the stay through the pendency of the appeal will also help diminish the risk that the Court and the parties might waste resources litigating issues in this case that are also being resolved by the Federal Circuit." *Id.*  The same reasoning applies here for all the reasons stated above.  Other courts have found similar.  *See, e.g.*, *In re Ameranth Patent Litig. Cases*, No.

11cv1810 DMS (WVG), 2015 WL 12868116, at *2 (S.D. Cal. June 4, 2015) (refusing to lift stay while some PTAB decisions were on appeal despite the PTAB not reviewing claims of one patent, finding some claims of other patents valid, some claims of other patents invalid, recognizing that the claims of the patent not reviewed "are indisputably related to the claims on appeal to the Federal Circuit" and stating that "[i]t makes little sense to proceed on those claims that are not on appeal when related claims are on appeal"); *Safe Storage LLC v. Dell Inc.*, No. 12-1624-GMS, Dkt. No. 43, slip op. at 1 n.1 (D. Del. Mar. 11, 2016) (denying motion to lift stay where PTAB determined claims were patentable, but defendants were appealing to the Federal Circuit, finding that "[n]one of these factors weigh in favor of lifting the stay at this time" and recognizing that "the Federal Circuit's final adjudication of the IPR appeals will simplify the issues for trial") (attached as Ex. D).  Moreover, maintaining the stay will reduce the burden of litigation on the parties and on the Court, especially given the prospect of inconsistent results here.  *See, e.g.*, *Murata Machinery USA v. Daifuku Co.*, 830 F.3d 1357, 1362-63 (Fed. Cir. 2016) (citing *NFC Tech.*, 2015 WL 1069111, at *5) (holding district court did not abuse its discretion in maintaining a stay by its consideration of whether maintaining a stay would reduce the burden of litigation on the parties and on the court).

The cases cited by Realtime are not applicable here because the Court faces a different set of unique facts and circumstances than in those cases.  For example, in *Network-1*, the court found that the issues would not be simplified, at least in part, because the patentee had added additional claims during the IPR that would not be subject to the appeal.  *See Network-1*, 2015 WL 11439060, at *4.  Because of this, the entire action could no longer be disposed of on appeal.  *See id.*  By contrast, here the entire action may still be disposed of on appeal.  Additionally, the court in *Network-1* did not confront the situation where related patents emerged from IPR with differing

results.  Thus, the court did not consider that related patents may be litigated in two separate and duplicative trials.  Similarly, in *Personal Audio*, the court found that the issues would not be simplified, at least in part, because there were "certain issues that were never instituted on IPR that this court will have to consider regardless of appeals—making the idea of further simplification illusory."  *Pers. Audio LLC v. Google, Inc.*, 230 F. Supp. 3d 623, 628-29 (E.D. Tex. 2017).  The court also found that "the ultimate kind of simplification—a complete resolution of the issues—is impossible here."  *Id.* at 629.  Again, the situation here is different, as the entire action may still be disposed of on appeal.

While not cited by Realtime, another case facing a different set of circumstances was *Intellectual Ventures II LLC v. BITCO General Insurance Corp.*, Nos. 6:15-cv-0059-JRG, 6:15-cv-0060-JRG, slip op. (E.D. Tex. June 21, 2018).  While the court lifted the stay as to a single claim of the asserted patent in *Intellectual Ventures*, the court did so because that claim had "survived multiple invalidity challenges and, in at least one instance, was found to be patentable by the PTAB after IPR."  *Id.* at 5.  The situation here is much different.  First, the *Intellectual Ventures* action was further along than the actions at issue here.  *Id.* ("[A]t the time the stay was imposed, discovery was almost complete, and trial was only months away.").  Second, none of the Asserted Patents have survived multiple invalidity challenges.  The '530 patent survived IPR on the one hand, but was found invalid by a jury on the other.  The '908 patent survived IPR, but is related to the '530 patent and has very similar claims.  The '728 patent survived IPR, yet the related '506 and '513 patents with similar claims were found invalid by the PTAB.  Thus, this is not a situation where one particular claim has consistently been found valid.  To the contrary, the validity of all of Realtime's patent claims remain suspect.

Thus, as when the Court first stayed the action, there is still a significant opportunity to

simplify the issues and conserve judicial and party resources by keeping the stay in place.

> **2.**      Realtime's Alternative Request Should Also Be Rejected

As described above, Realtime's proposal is highly likely to waste judicial and party resources. Realtime's alternative proposal fares no better. Realtime seeks to dismiss the claims on the patents the PTAB held invalid, but without prejudice to Realtime simply asserting them again at any time down the road. To start, this proposal shows Realtime's willingness to sit on its patent rights and cuts against any claim of prejudice from Realtime. And for the same reasons as above, this would likely lead to two or more duplicative trials. Should Realtime prevail on appeal, it has lost nothing that it is not already willing to give up. But should Defendants prevail on appeal, the Court and the Defendants will have wasted much time and effort litigating invalid claims.

> **B.**      **There Is No Significant Undue Prejudice To Realtime**

While a patentee may have an interest in timely enforcement of its patent rights, as this Court recognized when granting the stay, "concerns such as timely enforcement of patent rights are generally too generic, standing alone, to defeat a stay motion." (Dkt. No. 96 at 11 (citing *NFC Tech.*, 2015 WL 1069111, at *2-3.) Realtime's argument here boils down to just timely enforcement, and is insufficient to lift the stay standing alone.

Realtime does not, and cannot, dispute that it is a non-practicing entity that does not compete with any of the Defendants. As such, Realtime is seeking only monetary relief, and "mere delay in collecting those damages does not constitute undue prejudice." *Armor All/STP Prods. Co. v. Aerospace Commc'ns Holdings Co.*, No. 6:15-CV-781, 2016 WL 6397269, at *2 (E.D. Tex. Oct. 28, 2016) (quotation omitted). Moreover, the fact that the patents-in-suit soon expire changes nothing. Realtime has already sued the Defendants, and whether the stay is lifted or not does not affect the amount of damages Realtime may seek. Indeed, though Realtime cites to the fact that the Asserted Patents will expire soon, Realtime fails to identify any prejudice that this may cause.

Realtime suggests, without any basis or specifics, that "every passing moment further risks loss of evidence." (Mot. at 4.) First, Realtime has not shown that there has been any loss of evidence, much less "further" risk of loss. Second, such a "generalized claim of injury is entitled to little weight." *NFC Tech.*, 2015 WL 1069111, at *3. "A blanket statement that evidence may become stale or be lost does not amount to a compelling showing of prejudice." *Id.*; *see also Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:15-cv-551-RC-JDL, 2017 WL 379471, at *3 (E.D. Tex. Jan. 24, 2017) (explaining that a party should provide specifics as to loss of evidence to demonstrate undue prejudice because "[m]ere delay in the litigation does not establish undue prejudice").

Realtime also argues that Defendants' continued defense in this action and in the IPR petitions creates a cloud over Realtime's ability to license its patents. (Mot. at 4.) But before the stay, during the stay, and now, Defendants' position has been that Realtime's patents are not enforceable. Nothing in that regard has changed. Indeed, Realtime continues to file additional lawsuits, including on the '728, '908, and '530 patents. *See, e.g.*, *Realtime Data LLC v. Facebook, Inc.*, No. 1:18-cv-01373 (D. Col.) (filed June 5, 2018).

Moreover, the Court has already acknowledged Realtime's actions show a willingness to wait on its patent rights. In granting the stay, the Court recognized that,

> 1) Realtime filed a second round of cases against the same defendants nine months after a first round of cases; 2) Realtime stipulated to allow those defendants to proceed entirely with the schedules for that second round of cases; and 3) as a result, the court deadlines with respect to those defendants on all claims, including trial itself, were significantly pushed back.

(Dkt. 96 at 12.) In similar fashion, Realtime has also agreed to postpone post-trial briefing in the *Riverbed* case in which the jury found claims of the '530 patent invalid, including claim 1, which is asserted against each Defendant here. Realtime has agreed to stay the *Riverbed* briefing until completion of Realtime's appeal of the PTAB's decision finding claims of the '513 patent invalid.

13

Thus, with respect to any alleged prejudice to Realtime, this factor has not changed. Realtime's arguments present no specific prejudice and amount to a non-practicing entity merely seeking timely enforcement of patent rights. This alone is insufficient to show prejudice or any significant change in circumstance to warrant lifting the stay.

### C.     The Nascent Stage Of The Case Weighs Heavily In Favor Of Stay

As the Court found when granting the stay, "[t]his case is in its nascent stages. When Defendants filed their motion, trial was more than a year away and the parties had more than half a year before the close of fact discovery." (Dkt. 96 at 14.) Nothing has changed. And there is no special circumstance here to consider, so this factor weighs heavily in favor of keeping the stay in place. *See, e.g.*, *Network-1*, 2015 WL 11439060, at \*6 ("The infant stage of a case normally weighs against lifting a stay.") Indeed, Realtime all but concedes that this factor weighs heavily in favor of keeping the stay in place, as Realtime does not even offer an argument as to how this factor could tip in favor of lifting the stay. (*See* Mot. at 7.)

Cases from this District that have considered a stay after completion of IPRs but pending appeal do not change the result here. For example, in *Network-1*, the court reasoned that the Federal Circuit would return a decision in advance of the court's own *Markman* hearing. 2015 WL 11439060, at \*6. Here, given the stage of the proceedings, the parties would likely proceed through trial before a ruling from the Federal Circuit, potentially undoing all of that time and expense. Similarly, in *Personal Audio*, the court reasoned that "there was significant overlap" between the case and "prior related litigations" which had "resulted in significant discovery related to" the accused products. *Pers. Audio LLC v. Google, Inc.*, 230 F. Supp. 3d 623, 628 (E.D. Tex. 2017). No significant overlap exists here. No meaningful fact discovery has occurred in the Veritas and Savvis case, and the Court already determined in its order staying these cases that "[t]he fact that Plaintiff, Dell, and HPE previously conducted some discovery in the *Actian* actions

14

does not impact the Court's analysis."  (Dkt. No. 96 at 14.)

Thus, the circumstances have not significantly changed and this factor should be weighed heavily in favor of keeping the stay in place.

## V.    CONCLUSION

For the reasons described above, the circumstances have not changed in a significant way to warrant lifting the stay at this time.  The factors continue to weigh strongly in favor of a stay. Defendants respectfully request that the Court deny Realtime's motion.

Dated:  July 23, 2018

Respectfully submitted,

*/s/ Eric H. Findlay*
FINDLAY CRAFT, P.C.
Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
102 N. College Ave., Suite 900
Tyler, Texas 75702
Tel:  (903) 534-1100 / Fax:  (903) 534-1137
efindlay@findlaycraft.com
bcraft@findlaycraft.com

Lisa K. Nguyen
140 Scott Drive
Menlo Park, CA 94025-1008
Tel: (650) 328-4600 / Fax:  (650) 463-2600
lisa.nguyen@lw.com

Amit Makker
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600 / Fax: (415) 395-8095
amit.makker@lw.com

Alan M. Billharz
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200 / Fax: (202) 637-2201
alan.billharz@lw.com

**ATTORNEYS FOR DEFENDANT AND
COUNTERCLAIM-PLAINTIFF VERITAS
TECHNOLOGIES LLC**

*/s/ Kourtney Mueller Merrill*
Kourtney Mueller Merrill
Colorado State Bar No. 36662
**PERKINS COIE LLP**
1900 Sixteenth Street, Suite 1400
Denver, Colorado 80202
Phone: (303) 291-2388
Fax: (303) 297-3488
KMerrill@perkinscoie.com

Douglas L. Sawyer (Lead Attorney)
Illinois State Bar No. 6275849

**PERKINS COIE LLP**
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
Phone: (312) 324-8400
Fax: (312) 324-9400
DSawyer@perkinscoie.com

Eric Hugh Findlay
Texas State Bar No. 00789886
Roger Brian Craft
Texas State Bar No. 04972020
**FINDLAY CRAFT P.C.**
102 North College Avenue, Suite 900
Tyler, TX 75702
Phone: (903) 534-1100
Fax: (903) 534-1137
efindlay@findlaycraft.com
bcraft@findlaycraft.com

**ATTORNEYS FOR DEFENDANT SAVVIS
COMMUNICATIONS CORPORATION**

DATED:  July 23, 2018          By:   */s/ Lisa D. Zang*
_____

Melissa R. Smith
(TX Bar No. 24001351)
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257

Edward G. Poplawski
(CA Bar No. 113590)
epoplawski@wsgr.com
Olivia M. Kim
(CA Bar No. 228382)
okim@wsgr.com
Lisa D. Zang
(CA Bar No. 294493)

17

lzang@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone:  (323) 210-2900
Facsimile:   (866) 974-7329


*Counsel for Defendants*
*HEWLETT PACKARD ENTERPRISE CO. and*
*HP ENTERPRISE SERVICES, LLC*


DATED:  July 23, 2018                 By:   */s/ Deron R. Dacus*
                                                 _____

Deron R. Dacus
(Texas Bar No. 00790533)
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
(903) 705-1117
Fax: (903) 581-2543
ddacus@DacusFirm.com

Cynthia D. Vreeland
(Texas Bar No. 20625150
Massachusetts Bar No. 635143)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
cynthia.vreeland@wilmerhale.com

Gregory H. Lantier
(District of Columbia Bar No. 492043)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1801 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6327
gregory.lantier@wilmerhale.com

**ATTORNEYS FOR DEFENDANTS DELL INC. AND EMC CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service.  Local Rule CV-5(a)(3)(A) on July 23, 2018.

/s/ *Deron R. Dacus*
Deron R. Dacus